FILED

2014 MAR 26  PM 3:54

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY:_____

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>      v.<br><br>CLAUDE R. CAHEN,<br><br>  Defendant. | No. CR14-0178<br><br>I N F O R M A T I O N<br><br>[18 U.S.C. § 1349: Conspiracy to Commit Health Care Fraud] |

The United States Attorney charges:

[18 U.S.C. §§ 1349, 2(b)]

I.   INTRODUCTORY ALLEGATIONS

At all times relevant to this Information:

**A.   The Medicare Program**

1.   Medicare was a federal health care benefit program, affecting commerce, that provided benefits to individuals who were over the age of 65 or disabled.  Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services ("HHS").

2. Individuals who qualified for Medicare benefits were referred to as Medicare "beneficiaries." Each Medicare beneficiary was given a Health Identification Card containing a unique identification number ("HICN").

3. Physicians and other health care providers that provided medical services that were reimbursed by Medicare were referred to as Medicare "providers."

**B.  The Defendant and the Arcadia Clinic**

4. Defendant CLAUDE R. CAHEN ("defendant CAHEN") was a medical doctor licensed to practice in California.

5. Between on or about January 10, 2008, and at least in or about June 2009, defendant CAHEN was the president of Claude R. Cahen, M.D., Inc., a California corporation, which was located in Arcadia, California.

6. On or about July 29, 2008, defendant CAHEN opened a Citibank bank account (account number xxxxx4277) on behalf of Claude R. Cahen, M.D., Inc. (the "Arcadia Clinic Bank Account").

7. On or about August 19, 2008, defendant CAHEN signed a Medicare provider application, enrolling Claude R. Cahen, M.D., Inc., as a Medicare provider. In that application, defendant CAHEN informed Medicare that the practice was a multi-specialty clinic located in Arcadia, California (the "Arcadia Clinic"). In the application, defendant CAHEN also stated that the Arcadia Clinic used Medi-Link Electronic Claims Services, a company owned by H.H., to submit electronic claims to Medicare.

8. Also on or about August 19, 2008, defendant CAHEN signed an Electronic Funds Transfer Agreement directing Medicare to deposit reimbursements for claims submitted by the Arcadia Clinic into the Arcadia Clinic Bank Account.

9. Between in or about September 2008 and in or about June 2009, the Arcadia Clinic submitted approximately $1,189,520 in claims to Medicare, primarily for diagnostic tests, for which Medicare paid the Arcadia Clinic at least approximately $573,315. Defendant CAHEN is listed as the rendering provider on approximately 46 percent of those claims, while Drs. W.M. and R.W. are listed as the rendering providers on the remaining claims.

**C.  The Medicare Provider Reimbursement Procedures**

10. CMS contracted with private insurance companies to certify providers for participation in the Medicare program and monitor their compliance with Medicare standards, to process and pay claims, and to perform program safeguard functions, such as identifying and reviewing suspect claims.

11. To obtain reimbursement from Medicare, a physician first had to apply for and obtain a provider number. By signing the provider application, the physician agreed to (a) abide by Medicare rules and regulations; and (b) not submit claims to Medicare knowing they were false or fraudulent or with deliberate ignorance or reckless disregard of their truth or falsity.

12. If Medicare approved a provider's application, Medicare assigned the provider a Medicare provider number, which

enabled the physician to submit claims to Medicare for services rendered to Medicare beneficiaries.

13. Most providers, including the Arcadia Clinic, submitted their claims electronically pursuant to an agreement with Medicare that they would submit claims that were accurate, complete, and truthful. Under these agreements, providers are required to retain all original source documentation supporting the claims for 6 years and 3 months after the claim is paid.

14. Medicare required a claim for Medicare reimbursement of services to set forth, among other things, the beneficiary's name, HICN, and diagnosis; the Current Procedural Terminology ("CPT") code for the service provided to the beneficiary; any relevant billing modifiers; the date when and location where the service was provided; the name and physician identification number ("NPI") of the physician who ordered the service; and the identification number of the provider who actually rendered the service.

15. Medicare claims for diagnostic testing had both a technical and professional component, representing the performance and interpretation of the test, respectively. A physician could indicate that he provided only the technical component of the test by using the billing modifier TC. A physician could indicate that he provided only the professional component of the test by using the billing modifier 26. The absence of either the TC or 26 modifier on a claim indicated that the physician had performed both the technical and professional components of the test.

16. Medicare reimbursed providers only for services that were medically necessary to the treatment of a beneficiary's illness or injury, were prescribed by a beneficiary's physician, and were provided in accordance with Medicare regulations and guidelines that governed whether a particular service would be reimbursed by Medicare.

## II. THE OBJECT OF THE CONSPIRACY

17. Beginning in or about September 2008, and continuing to in or about June 2009, in Los Angeles County, within the Central District of California and elsewhere, defendant CAHEN, together with H.H. and others known and unknown to the United States Attorney, knowingly combined, conspired, and agreed to commit health care fraud, in violation of Title 18, United States Code, Section 1347.

## III. THE MANNER AND MEANS OF THE CONSPIRACY

18. The object of the conspiracy was carried out, and to be carried out, in substance, as follows:

    a. Medicare beneficiaries would be approached by unknown individuals who promised them money or free durable medical equipment such as power wheelchairs from Medicare.

    b. In response, the Medicare beneficiaries would supply their Medicare cards, HICNs, and patient information; they often would be taken to clinics that were not affiliated with their regular primary care physicians; and they often would subsequently receive power wheelchairs.

    c. These clinics, primarily affiliated with Drs. G.C. and W.S., would purport to refer the Medicare beneficiaries to the Arcadia Clinic for various diagnostic tests, even though

the beneficiaries themselves were not aware of these referrals and often had not seen the referring doctors, and even though the tests were not medically necessary.

   d. As defendant CAHEN then well knew and intended, H.H. and others affiliated with the Arcadia Clinic would use the names, HICNs, and other patient information of those Medicare beneficiaries to submit false and fraudulent claims to Medicare under the Arcadia Clinic's provider number, falsely representing that defendant CAHEN or Drs. W.M. or R.W. had performed both the technical and professional components diagnostic tests for those beneficiaries at the Arcadia Clinic location. In fact, as defendant CAHEN then well knew, defendant CAHEN had not performed any services for the beneficiaries and was not even in the country between on or about December 20, 2008, and in or about June 2009. Additionally, as defendant CAHEN also then well knew, Drs. W.M. and R.W. had not provided services to Medicare beneficiaries at the Arcadia Clinic.

   e. Defendant CAHEN would direct that Medicare payments be deposited into the Arcadia Clinic Bank Account that he controlled. Between in or about September 2008 and in or about June 2009, the Arcadia Clinic submitted approximately $1,189,520 in false and fraudulent claims to Medicare, on which Medicare paid approximately $573,315 into the Arcadia Clinic Bank Account.

   f. Defendant CAHEN provided pre-signed checks drawn on the Arcadia Clinic Citibank bank account to H.H., who, as defendant CAHEN then well knew, used some of those checks to pay

1  large amounts of money to various entities, including IFA Group,
2  Inc., and UFA Group, Inc., even though defendant CAHEN was not
3  aware of any services that IFA Group and UFA Group provided to
4  the Arcadia Clinic.

ANDRÉ BIROTTE JR.
United States Attorney

*/s/ R. E. Dugdale*

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

RICHARD E. ROBINSON
Assistant United State Attorney
Chief, Major Frauds Section

CONSUELO WOODHEAD
Assistant United States Attorney
Deputy Chief, Major Frauds Section

KRISTEN A. WILLIAMS
CATHY J. OSTILLER
Assistant United States Attorneys
Major Frauds Section